Filed 6/14/23  In re K.C. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re K.C., et al., Persons Coming Under the Juvenile Court Law. | D081537 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. Nos. J520852, J520852AB) |
| v. | |
| K.C., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Browder A. Willis III, Judge.  Conditionally reversed in part and remanded with directions.

Sarah Vaona, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel and Natasha C. Edwards, Senior Deputy County Counsel.

K.C. (Father) appeals two orders arising from special hearings in the Welfare and Institutions Code[1] section 300 dependency proceedings for minors, Kd.C. and Km.C.[2]  His sole contention on appeal is that the San Diego County Health and Human Services Agency (Agency) and the juvenile court failed to conduct an adequate initial inquiry under the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq) and section 224.2.  Specifically, Father contends there was no inquiry into the Native American ancestry of the paternal grandfather, who appeared at two hearings, and two paternal relatives, whom the Agency contacted.  The Agency concedes error.  We accept the concession, conditionally reverse the orders, and remand for the limited purpose of compliance with ICWA.

## BACKGROUND[3]

In September 2021, the Agency filed a section 300, subdivision (b), dependency petitions for Km.C. and Kd.C., alleging then two- and three-year-old minors (respectively) were at substantial risk of harm because Father was physically abusing Mother and violating a criminal protective order (CPO).  The Agency placed the children in foster care.

At a detention hearing that month, the court detained Km.C. and Kd.C. and ordered reunification services for the parents.  The court also asked Mother and maternal grandfather—both appeared at the hearing—about their Native American ancestry.  Maternal grandfather stated he was not

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

[2]    G.C. (Mother) is not a party to this appeal.

[3]    Because Father's sole contention on appeal concerns ICWA, we limit our factual background accordingly.

aware of any such ancestry, but Mother said she had Native American ancestry based on her recent DNA test. The court stated the DNA test did not "necessarily qualif[y] as a basis to believe there is a specific tribal registration" and found "[M]other's family history . . . does not apply."

At the initial jurisdiction and disposition hearing, Father denied any known Native American ancestry. The court found without prejudice that ICWA was inapplicable.

Around October 2021, the Agency called a paternal relative about placement and mailed another paternal relative a relative notification letter.[4] There is no documentation the Agency asked these relatives about their Native American ancestry.

That month, the paternal grandfather appeared at a jurisdiction and disposition hearing, but the court did not inquire about his Native American ancestry.

At the contested jurisdiction hearing in December 2021, the court found true the allegations in the petitions. Although the paternal grandfather again appeared, the court did not ask him about his Native American ancestry. The Agency later spoke to the paternal grandfather, but there is no documentation he was asked about his Native American ancestry.

In the meantime, Father completed his substance abuse assessment, tested negative for alcohol and substances, and took domestic violence, parenting, and education classes. Then in March 2022, Father was arrested for violating two CPOs, both prohibiting him from coming within 100 yards of Mother. According to the police report, Father and Mother were still living together and had an altercation before the police arrived at the home. Father

---

[4]    It is unclear from the record exactly how these relatives are related to the children.

3

left the state after the incident and never completed the remainder of his reunification services. Around the same time, Mother moved to another county and filed a motion to transfer the case to that county. The Agency agreed to the transfer.

At a special hearing on December 19, 2022, the court terminated reunification services for Father and transferred the case to Mother's county of residence. The court again found without prejudice that ICWA was not applicable. Father appealed.

DISCUSSION

In response to concerns regarding the separation of Native American children from their tribes through adoption or foster care placement with non-Indian families (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7 (*Isaiah W.*)), Congress enacted ICWA to give tribes the "right to intervene in or exercise jurisdiction over a dependency proceeding involving the Indian child"[5] (*In re I.F.* (2022) 77 Cal.App.5th 152, 160). Under California law adopted pursuant to ICWA, the juvenile court and Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a); see *Isaiah W., supra*, at p. 9.)

Section 224.2 creates three distinct duties: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice. (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*); *In re D.F.* (2020) 55 Cal.App.5th 558, 566.) Relevant here is the duty of initial inquiry. That duty "begins with the initial contact, including, but not limited to, asking the party

---

[5] An " 'Indian child' " is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see § 224.1, subd. (a).)

4

reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) The duty further requires the juvenile court to ask, at "the first appearance in court of each party," whether each participant knows or has reason to know the child is an Indian child. (§ 224.2, subd. (c).) "If a child is placed into the temporary custody of a county welfare department pursuant to Section 306 or county probation department pursuant to Section 307," the Agency has a duty to ask "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b).)

The Agency "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status." (Cal. Rules of Court, rule 5.481(a)(5).)

When the facts are undisputed, as here, "we independently determine whether ICWA's requirements have been satisfied." (*D.S., supra*, 46 Cal.App.5th at p. 1051.)

Father contends the Agency and court failed to fulfill their initial duty of inquiry under subdivisions (a) to (c) of section 224.2. Father asserts neither the court nor the Agency asked the paternal grandfather and relatives about their Native American ancestry. The Agency concedes its failure to ask the paternal relatives is inconsistent with subdivision (b) of section 224.2, and it should have asked the paternal grandfather as well.

We question whether subdivision (b) of section 224.2 was triggered if the children were not placed in temporary custody under section 306 or by

5

the probation department pursuant to section 307.[6] (See *In re Robert F.* (2023) 307 Cal.Rptr.3d 492, 501-502 [duty to inquire extended family members under section 224.2, subdivision (b), is triggered only when the child is placed in temporary custody under section 306]; *In re Ja.O.* (2023) 91 Cal.App.5th 672, 681[[same]). Even so, we need not reach this question here and conclude the duty of initial inquiry was not satisfied independently of whether subdivision (b) applies.

Subdivision (c) imposed on the court a duty to inquire the paternal grandfather about his Native American ancestry when he appeared at two of the hearings. (§ 224.2, subd. (c).) The court, however, did not do so, and the Agency never followed up with him. Because this falls short of the inquiry obligations imposed by section 224.2, we accept the Agency's concession. Accordingly, conditional reversal and limited remand are appropriate to ensure compliance with the initial duty to inquire.

## DISPOSITION

The December 19, 2022, orders are conditionally reversed. The matter is remanded to the court with directions to comply with the inquiry provisions set forth in section 224.2. If, after completing its inquiry, neither the Agency nor the juvenile court has reason to believe or reason to know the children are Indian children, the orders shall be reinstated. If the Agency or the juvenile court has reason to believe or reason to know either of the

---

[6] Sections 306 and 307 authorize a social worker and the probation department to take a child into temporary custody "without a warrant" in certain situations, whereas section 340 provides for the issuance of protective custody warrants. (§§ 306, subd. (a)(1) & (2), 307, 340, subd. (b)(2).)

children is an Indian child, the juvenile court shall proceed accordingly.  In all other respects, the orders are affirmed.

By stipulation of the parties, the clerk of this court is directed to issue the remittitur immediately.  (Cal. Rules of Court, rule 8.272(c)(1).)


CASTILLO, J.

WE CONCUR:


DATO, Acting P. J.


KELETY, J.